[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
July 23, 2008
THOMAS K. KAHN
CLERK

No. 07-14561
Non-Argument Calendar

_____

D. C. Docket No. 05-00576-CV-RRA-S

LINDA HOLDER,

Plaintiff-Appellant,

versus

R. JAMES NICHOLSON,
Secretary, Department of Veterans Affairs,
SCOTT ISAACKS,
individually and in his official capacity as
Clinical Operations Manager, Diagnostic Medicine Services,
GARY COLEY,
individually and in his official capacity as Chief
Technologist, Radiology Services,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(July 23, 2008)**

Before BIRCH, CARNES and BARKETT, Circuit Judges.

PER CURIAM:

Linda Holder, an African-American woman and a former employee of the Department of Veterans Affairs hospital ("the hospital"), appeals the district judge's grant of summary judgment to the Secretary of the Department of Veterans Affairs ("the Secretary") in her suit alleging racial and sexual discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, age discrimination under 29 U.S.C. § 621 et seq., and unlawful retaliation for opposing such discrimination. Because the evidence before the district judge, viewed in the light most favorable to Holder, did not support her numerous claims of discrimination, and she has advanced no specific error on appeal, we affirm.

## I.  BACKGROUND

Holder filed a multi-count complaint against the Secretary, as well as two of her supervisors, and asserted various causes of action related to wrongs that allegedly occurred during her employment at the hospital.  R1-1.  Pursuant to Holder's subsequent motion for voluntary partial dismissal, the district judge dismissed the two supervisor defendants and all causes of action other than the discrimination and retaliation claims in Count Three of her complaint.  R1-19, 23. In Count Three, Holder alleged that she suffered discrimination and retaliation

2

because she was held to a higher standard than similarly situated white and younger employees, and she was subjected to frequent unmerited disciplinary actions. R1-1 at 17-18. More specifically, she alleged that, on or about May 13, 2004, her supervisors required her to attend a meeting without union representation, supervisor Gary Coley harassed her in front of a patient, and supervisor Scott Issacks required her to take administrative leave for the day. Id. at 18. Additionally, she alleged that the next day Coley instructed her to remain on administrative leave until further notice; she later was removed from employment, replaced by an unprotected individual, and did not receive her final paycheck. Id. at 18-19. Holder stated that she had exhausted her administrative remedies as to these claims and attached her complaint to, and letter from, the Equal Employment Opportunity Commission ("EEOC"). Id. at 20-21; see id. Exhs. A and B.

In her complaint to the EEOC, Holder asserted claims substantially identical to those in Count Three of her judicial complaint. Id. Exh. A at unnumbered 1, 3-4. Regarding her termination, Holder stated that, after a verbal dispute with her supervisor, she was placed on indefinite administrative leave on May 14, 2004, and that she received notice of a proposed termination on June 29, 2004. Id. Exh. A at 1-3. By letter, the EEOC advised Holder of the dismissal of her EEOC claims and informed her that she had failed to contact an EEO counselor to discuss the events

3

described in her claims within the 45-day period required by EEOC regulations. Id. Exh. B at 1-3. The EEOC letter states that it was the final agency decision regarding her claims of harassment and being placed on administrative leave and that Holder was permitted to file a judicial action with regard to those claims; concerning her termination claim, Holder was permitted to file an administrative appeal. Id. at 3-5. At the close of discovery, the Secretary filed a motion for summary judgment. Proceeding pro se, Holder filed a response. Thereafter, the magistrate judge issued an extensive and detailed report and recommendation on the motion for summary judgment. R2-70.

The magistrate judge found that, by failing to argue a number of her claims in her response to the Secretary's motion for summary judgment, Holder had failed to establish a prima facie case of discrimination concerning those claims.[1] Those claims included: (1) Holder's 7-day suspension, id. at 52, (2) her assignment to perform a procedure that she did not know how to perform, id. at 53, (3) her assignment to file x-rays, id. at 55, (4) the miscellaneous acts of reprisal alleged in a July 2003 EEOC complaint, id. at 56, and (5) her 14-day suspension, id. at 57-58.

---

[1]As to each of these claims, the magistrate judge also found that, even if Holder had raised the claims, the evidence demonstrated that the Secretary was entitled to summary judgment. R2-70 at 52-58.

Concerning the remaining claims, the magistrate judge first found Holder's claim of racial harassment related to an altercation with a coworker, when Holder attempted to reach for the telephone as a coworker was attempting to call supervisor Coley, and the coworker slapped Holder on the arm. Id. at 16-17. The magistrate judge found that the EEOC, upon reviewing the complaint containing this claim, as well as several other claims, partially dismissed the assault claim without an investigation and notified Holder that she could appeal the partial dismissal of the assault claim once the agency had issued a final decision regarding her remaining claims. Id. at 17-18. The magistrate judge concluded that, under EEOC regulations, Holder had 30 days following the EEOC's final decision concerning her remaining claims to appeal her partially dismissed assault claim; her administrative appeal, however, did not raise that claim, and she raised it for the first time in her judicial complaint, more than one year from the date of the final EEOC decision. Id. at 17-18, 43-45. Therefore, the magistrate judge decided that Holder had not exhausted her administrative remedies concerning this claim. Id. at 45. The magistrate judge further found that, even if this claim had not precluded, it represented a single incident that was not sufficiently severe and pervasive to alter the terms and conditions of Holder's employment. Id. at 46.

Second, regarding Holder's claim that she had suffered racial and sexual discrimination because of her employer's failure to train her in CT scan procedures, the magistrate judge found that a shortage of CT technicians during the day shift caused supervisor Coley to schedule several day-shift employees to assist with support and clerical duties in the CT department, but none of them had received technical CT training; Holder was not included in the scheduling because she worked the night shift. Id. at 18-23. The magistrate judge found that Holder had not established a prima facie case of disparate treatment because the evidence showed that no CT training was offered to anyone; consequently, she was not treated differently from any other employee in not receiving the training. Id. at 47.

Third, concerning Holder's claim that she had suffered age discrimination and unlawful retaliation because she was not given a bonus, the magistrate judge found that supervisor Issacks awarded $50 incentive awards to employees who had not had a disciplinary action that year but decided that Holder, who had received a disciplinary action earlier that year in relation to a racially offensive outburst against a fellow employee, should not receive an award. Id. at 23-24. The magistrate judge found that Holder had not provided admissible evidence to rebut this nondiscriminatory reason for denying her the award; her statement that another

6

reprimanded employee had received the award was hearsay, because it was not based on her personal knowledge. Id. at 47-48.

Fourth, regarding Holder's claim that she had suffered unlawful retaliation in December 2002, when she was not selected for the position of CT Scan Tech, the magistrate judge found that Coley, along with Warren Dukes, the hospital's radiological supervisor, had interviewed Holder and another candidate for the position and had given each candidate scores. Id. at 25-26. According to Coley's interview notes: (a) the other candidate had specific training and experience in CT procedures, while Holder had observed but never trained in or performed CT scans; (b) the other candidate often was requested by other employees to assist in the emergency room, while Holder often was confrontational and argumentative with her coworkers; and (c) the other candidate had been commended by past supervisors for her high-quality work, while Holder had been disciplined in the past for refusing to perform certain procedures. Id. at 26-27. Issacks testified that the other candidate was chosen because she had more CT experience. Id. at 27-28. The magistrate judge noted, however, that Henry Luckett, a retired CT Tech, had stated that he had trained Holder in CT procedures in the past, and Holder had a general knowledge of some of the skills required to be a CT Tech. Id. at 28. The magistrate judge determined that Luckett did not testify that Coley knew of this

7

training, although Coley did know that Holder had worked with Luckett in the CT department. Id. at 28. The magistrate judge found that the Secretary had articulated legitimate business reasons for not awarding Holder the position and that Holder had not provided evidence sufficient to demonstrate that a reasonable employer would not deem the other candidate's qualifications greater than her own; therefore, she had not demonstrated that the employer's action was unlawful. Id. at 48-52.

Fifth, concerning the incident in which Holder allegedly was denied union representation, and a phone was snatched from her, the magistrate judge found that Coley had met with Holder to discuss her competency evaluation, Holder requested that a union representative be present at the meeting, and, while in Coley's office, Holder tried to use Coley's phone without permission and was refused by Coley. Id. at 33-36. The magistrate judge found that Holder had not presented evidence that she was denied union representation, or that, even if that had been the case, the denial was an act of discrimination. Id. at 58. The magistrate judge stated that, even if management's conduct in this instance did constitute retaliatory harassment, it was not sufficiently severe and pervasive to alter the terms of Holder's employment. Id.

8

Sixth, regarding Holder's claim that she had been harassed and unlawfully terminated, the magistrate judge found that: (a) the EEOC dismissed these claims because Holder failed to initiate contact with an EEO counselor within 45 days of the alleged conduct; (b) the stated reasons for Holder's termination were failure to follow instructions, unreasonable delay in providing patient care, and disrespectful conduct toward other personnel; and (c) Holder's supervisor made the decision to suspend Holder after reviewing the evidence and considering Holder's years of service, work record, and the seriousness of the charges against her. Id. at 39-40. The magistrate judge determined that the claim should be dismissed with prejudice because Holder had failed timely to seek EEO counseling on the claim. Id. at 59-60. The magistrate judge concluded that Holder had presented no evidence to substantiate her assertions that she timely had contacted a counselor or that she did not know that she had been terminated until a date within 45 days of the day on which she sought counseling. Id. at 60-61. Therefore, the magistrate judge recommended that the Secretary's motion for summary judgment be granted. Id. at 61. Neither party filed objections to the report and recommendation; the district judge adopted the magistrate judge's report and recommendation, granted the Secretary's summary-judgment motion, and dismissed Holder's claims with prejudice. R2-71, 72.

9

## II. DISCUSSION

Holder generally asserts on appeal that the district judge erred by finding that her evidence was insufficient to state a claim for discrimination and retaliation for prior EEO activity. Intermixed with her claims are several legal arguments. In what appears to be a reference to the district judge's finding that she had failed to raise her wrongful termination claim timely, Holder asserts that she did not know that she had been terminated from her job until August 25, 2004, because money still was being deposited into her account. She states that her termination claim was "inextricably intertwined" with her claims of harassment. Appellant's Br. at 5. In a reference to the district judge's finding that she had failed to exhaust her claim about the alleged assault in a struggle for the telephone, Holder states that she appealed the entire case number containing that claim. Her appellate brief includes an appendix with new responses to statements of fact that the Secretary submitted to the district judge along with his motion for summary judgment.

In her reply brief, Holder states that (a) she did not waive arguments that she failed to raise in her opening brief, and those arguments should be reviewed for plain error; (b) because she is a pro se litigant, we should review all claims that were dismissed in the district court, including the counts in her complaint that she voluntarily dismissed; (c) we should consider new evidence on appeal, a

10

proposition that she supports by citing three Social Security cases; and (d) the district judge erred by finding that she had not exhausted certain claims in her complaint.

We review a district judge's granting summary judgment de novo and apply the same standards. Maniccia v. Brown, 171 F.3d 1364, 1367 (11th Cir. 1999). "Summary judgment is appropriate when 'there is no genuine issue as to any material fact . . . and the moving party is entitled to a judgment as a matter of law.'" Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1085 (11th Cir. 2004) (quoting Fed. R. Civ. P. 56(c)). The existence of some nonmaterial factual dispute is insufficient to survive a motion for summary judgment. Chapman v. AI Transport, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc). For a factual dispute to be considered "material," there must be "sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor." Id. at 1023. (quotation omitted).

Issues not briefed on appeal, even by a pro se litigant, are deemed abandoned. Horsley v. Feldt, 304 F.3d 1125, 1131 n.1 (11th Cir. 2002). Further, a party may not incorporate by reference arguments presented to the district judge; there must be specific and clear identification of the issues presented for review with citations to authorities and portions of the record on which the appellant

relies. Four Seasons Hotels & Resorts, B.V. v. Consorcio Barr S.A., 377 F.3d 1164, 1167 n.4 (11th Cir. 2004). Moreover, we have held that "[f]ailure to raise an issue, objection or theory of relief in the first instance to the trial court generally is fatal," and we have applied that rule to bar consideration of claims that a plaintiff's brief did not raise in response to a defendant's motion for summary judgment and recognized that a plaintiff may not "'bury a minor claim in a voluminous complaint, ignore the claim in responding to a motion for summary judgment and then sandbag its opponents and the court by resurrecting the claim after summary judgment is granted.'" Iraola & CIA, S.A. v. Kimberly-Clark Corp., 325 F.3d 1274, 1284 & n.6 (11th Cir. 2003) (citation omitted).

A federal employee who wishes to bring an action under Title VII must first exhaust her administrative remedies by bringing her complaint before the EEOC and providing it with all of the information that it needs to investigate and resolve the dispute. Crawford v. Babbitt, 186 F.3d 1322, 1326 (11th Cir. 1999). Prior to filing a formal complaint with the EEOC, federal employees who believe that they have suffered discrimination must contact an EEO counselor within 45 days of the allegedly discriminatory act, but the EEOC may extend that deadline, if the complainant shows that she was unaware of the time limit or was prevented from circumstances beyond her control from meeting the deadline. 29 C.F.R.

12

§ 1614.105(a)(1), (2).  The EEOC must dismiss a complaint that is not timely brought before a counselor.  29 C.F.R. § 1614.107(a)(2).  If the EEOC partially dismisses a complaint, the complainant may initiate an EEOC appeal of the dismissed claims only when a final decision has been taken on the remaining claims.  29 C.F.R. § 1614.107(b).  After the agency itself has rendered a final decision on a federal employee's complaint, the employee has the option to appeal the decision to either the federal district court or to the EEOC.  42 U.S.C. § 2000e-16(c).  In either case, however, the complainant must file the appeal within 30 days from the final decision.  29 C.F.R. § 1614.402(a), 401(a).

To succeed on her exhausted claims of employment discrimination based on circumstantial evidence, Holder must follow the framework established by the Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973), which we have paraphrased:

> Under the familiar McDonnell Douglas framework, the plaintiff must first create an inference of discrimination through his prima facie case. Once the plaintiff has made out the elements of the prima facie case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action. If the employer meets this burden, the inference of discrimination drops out of the case entirely, and the plaintiff has the opportunity to show by a preponderance of the evidence that the proffered reasons were pretextual. Where the plaintiff succeeds in discrediting the employer's proffered reasons, the trier of fact may conclude that the employer intentionally discriminated.

13

<u>Vessels v. Atlanta Indep. Sch. Sys.</u>, 408 F.3d 763, 767 (11th Cir. 2005) (per curiam) (citations omitted).

To establish a prima facie case for discrimination based on a theory of disparate treatment, a plaintiff must show that "(1) she is a member of a group protected by Title VII; (2) she was qualified for the position or benefit sought; (3) she suffered an adverse effect on her employment; and (4) she suffered from a differential application of work or disciplinary rules." <u>Spivey v. Beverly Enterprises, Inc.</u>, 196 F.3d 1309, 1312 (11th Cir. 1999). To create a prima facie case for discrimination on the basis of sexual or racial harassment, one must establish that the alleged act(s) of harassment were "sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment." <u>Cotton v. Cracker Barrel Old Country Store, Inc.</u>, 434 F.3d 1227, 1231 (11th Cir. 2006). An employer may not retaliate against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

Once the plaintiff has established a prima facie case, and the employer has met its burden to produce a legitimate, nondiscriminatory reason for an adverse employment action, the plaintiff may establish that the employer's proffered reason

is a pretext for unlawful discrimination "'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" Carter v. Miami, 870 F.2d 578, 584 (11th Cir. 1989) (quotation omitted). To find in favor of the employer, a finder of fact "'need not determine that the employer was correct in its assessment of the employee's performance; it need only determine that the defendant in good faith *believed* plaintiff's performance to be unsatisfactory.'" Elrod v. Sears, Roebuck & Co., 939 F.2d 1466, 1470 (11th Cir. 1991) (citation omitted). In addition, we have held that a plaintiff cannot demonstrate that the employer's proffered reason was pretextual merely by calling into question the wisdom of the employer's decision; rather, the plaintiff must "meet that reason head on and rebut it" with evidence of discrimination. Chapman 229 F.3d at 1030.

Viewing the evidence in the light most favorable to Holder, the district judge did not err by granting summary judgment to the Secretary on each of her claims. First, Holder made no argument in her brief regarding several claims in response to the Secretary's motion for summary judgment: (a) her 7-day suspension after a confrontation over an incorrect x-ray, R2-70 at 29-31; (b) her assignment to do a procedure that she did not know how to perform, id. at 31-32; (c) her assignment to

15

file x-rays in the evening, id. at 32-33; (d) the miscellaneous acts of reprisal contained in her July 2003 EEOC complaint, which included someone's turning off the lights, Coley's snatching a phone from her during a meeting, and a coworker's being unfriendly to her, id. at 33-36; and (e) her 14-day proposed suspension, id. at 36-39. Accordingly, we will not review those claims. Holder has buried multiple claims in her voluminous complaint, has ignored claims in responding to the summary-judgment motion, and then attempted to resurrect the claims after summary judgment was granted. Iraola & CIA, S.A., 325 F.3d at 1284 n.6. Additionally, regarding Holder's claims that she was denied training for and promotion to an MRI Tech position, the magistrate judge accurately found that she had dropped those claims in her proceedings before the EEOC, and, therefore, they are not properly before us. R2-70 at 28-29; Doc. 37-2 at 79-83.

Concerning Holder's remaining claims, the district judge accurately found that, while she allegedly was assaulted by a coworker during an altercation over a telephone, Holder had not exhausted her administrative remedies as to this claim, because she did not raise the claim in her administrative appeal within 30 days from the final decision. R2-70 at 44-46. Even if she had exhausted the claim, she had not created a prima facie case for discrimination because the claim alleged only a single instance of minor physical contact during an argument, which was not

16

sufficiently severe and pervasive to create a hostile work environment or alter the terms of her employment. Cotton, 434 F.3d at 1231. With regard to Holder's claim that she was denied CT training, because all of the testimony on this point demonstrated that no training was offered during the CT rotations for which she was not scheduled, R2-70 at 18-21, Holder was not denied an opportunity that was afforded to others, and, therefore, she did not establish a prima facie case for discrimination. Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642-45 (11th Cir. 1998).

Regarding Holder's claim that she was not given a $50 bonus, even if she had established a prima facie case for reprisal for prior EEO activity, she presented no evidence to refute Issacks's testimony that he denied her the award based on his belief that she had received a reprimand, and he did not give the award to anyone who had received a reprimand. R2-70 at 23-25. While Holder asserted that another employee who had received a reprimand received the award, she provided no evidence for this proposition and admitted that she had no personal knowledge of whether the other employee had received the award. Id. at 23 n.13. Therefore, because Holder failed to present evidence to "meet head on and rebut" Issacks's proffered nondiscriminatory reason for denying her the award, the district judge

17

did not err by granting the Secretary summary judgment on this claim. Chapman 229 F.3d at 1030.

Concerning Holder's claim that she had not been promoted to the CT Scan Tech position, and assuming that she had established a prima facie case for discrimination, because the other candidate had not been involved in prior EEO activity, all of the testimony showed that Holder was not chosen based on the nondiscriminatory reason that those making the selection believed the other candidate was more qualified. R2-70 at 25-28. Despite Holder's assertion that she had worked as an x-ray technician for longer than the candidate selected, Holder presented no evidence to refute the claim that the decisionmakers nonetheless genuinely believed that the other candidate was better for the job, as illustrated by Coley's testimony that the other candidate had more experience actually working with CT technology and a better reputation for working well with others and following instructions. Elrod, 939 F.2d at 1470; Chapman, 229 F.3d at 1030. Therefore, the district judge did not err by granting the Secretary's motion for summary judgment on this claim.

Finally, regarding Holder's claim that she had been wrongfully terminated, the EEOC determined that Holder had failed to exhaust this claim by not presenting it to an EEO counselor within 45 days of her termination; although her

termination was final on July 30, 2004, Holder did not make initial contact with an EEO counselor regarding her claim until September 29, 2004, and the record showed that she should have been aware of the time limits and was not prevented from circumstances beyond her control from timely contacting an EEO counselor. R1-1, Exh. B at 1-3. In her complaint to the EEOC regarding her termination, Holder stated that, after a verbal dispute with her supervisor, she was placed on indefinite administrative leave on May 14, 2004, and received notice of a proposed termination on June 29, 2004; these factual assertions support the EEOC's determination that she should have been aware of her termination in time to contact an EEO counselor within 45 days of July 30, 2004, more than one month after she conceded that she received notice of a proposed termination. Id. Exh. A at 1-3. Therefore, the district judge did not err by determining that Holder had failed to exhaust her administrative remedies by failing to contact an EEO counselor within 45 days of her adverse employment action. 29 C.F.R. § 1614.107(a)(2). Holder's contention that her termination claim was inextricably intertwined with her other claims is inaccurate on its face, because her termination was a separate act from her other claims, such as, a coworker's hitting her or her not being selected for a promotion. Moreover, this argument is unsupported by the facts in the record,

which show that Holder, in her numerous complaints to the EEOC, treated each perceived wrong as a separate action.  R2-70 at 16-41, R1-1 at 4-13.

### III.  CONCLUSION

Holder has appealed the district judge's granting summary judgment to the Secretary in her action alleging racial and sexual discrimination.  Viewed in the light most favorable to Holder, the evidence before the district judge did not support her numerous claims of discrimination, and she has alleged no specific error on appeal.  Accordingly, the district judge's granting summary judgment to the Secretary is **AFFIRMED.**